| | |
|---|---|
| JOSEPH MITCHELL MILLER, ET AL., <br><br> *Plaintiffs,* <br><br> v. <br><br> DOGWOOD VALLEY CITIZENS ASSOCIATION, INC., ET AL., <br><br> *Defendants* | CIVIL NO. 3:06cv00020 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' Motion to Dismiss, filed on June 6, 2006 (docket entry no. 10) and Defendants' Motion to Dismiss Amended Complaint, filed on August 31, 2006 (docket entry no. 28). For the following reasons, these motions will be DENIED in an order to follow.

## I. BACKGROUND

### *A. Factual Background and Causes of Action*

Accepting all allegations in Plaintiffs' amended complaint as true and drawing all reasonable inferences in favor of Plaintiffs, the facts are as follows.

Plaintiffs are individual owners of parcels of land in Greene County's Dogwood Valley subdivision, which consists of approximately 320 lots. Defendants are the Dogwood Valley Citizens Association ("DVCA") and its directors and managers.

The original developers of Dogwood Valley created the DVCA and transferred roads and common areas to it by deed. The general district court in Greene County (in 1984) and the

1

Supreme Court of Virginia (in 2004) ruled, however, that the DVCA had never received the right to receive road maintenance fees because there was no conveyance providing such a right and that, as a matter of law, the DVCA was not a property association under Virginia law and therefore had no authority to impose and collect assessments under Virginia law.

Despite these decisions, Plaintiffs allege that Defendants continue to impose special assessments on the Dogwood Valley property owners and that Defendants have engaged in extortionate acts. These acts include:

(1) sending notices that demand payment of the assessments, that demand payment of a $50 penalty, that demand payment of interest, that demand payment of attorney's fees, and that state that failure to pay these costs will result in Defendants filing a lien;
(2) filing such liens, creating a cloud on the owner's title;
(3) filing suit against property owners who are unwilling to pay this money, causing such property owners either to incur legal expenses to defend against the suit or to pay the alleged money to avoid a forced sale of his property;
(4) refusing to accept a property owner's second, duplicative payment of a special assessment and then imposing liens on the owner's property anyway;
(5) imposing liens on property even after the property owner pays the allegedly illegal and invalid special assessment;
(6) refusing to release liens on property after receiving payment of the assessment in violation of Virginia law;
(7) foreclosing on property owned by people who refuse to pay assessments;
(8) purchasing foreclosed-upon lots for a fraction of their assessed value;
(9) accepting payment of legal fees from anonymous donors who Plaintiffs believe are developers, contractors, or others who can either benefit from the forced sale of lots subject to liens or who can buy these lots outright at a discount at such a forced sale;
(10) refusing to provide an audited accounting of its use of the received assessments, an alleged violation of Virginia Code § 55-510;
(11) failing to provide the full identity of its anonymous donors, an alleged violation of Virginia Code § 55-510;
(12) hindering the ability of DVCA members to vote at DVCA meetings by stating that the voters have failed to pay the assessments; and
(13) refusing to repair roads needing such repair and enjoining Plaintiffs from repairing the roads themselves.

Plaintiff Miller ("Miller") claims that he received a notice of a road dues assessment and paid the assessment in cash at a DVCA meeting. At the meeting, Defendant Lowe ("Lowe"), president of the DVCA, allegedly directed a private investigator to return Miller's cash payment. When Miller refused to accept the money, the investigator allegedly "pulled back his jacket, revealing a [.]38 revolver, and insisted that … Miller take the money back" and said "[t]ake it or we're going to make you pay." Miller still refused to accept the money.

While Miller was out of town three months later, Miller's brother (who is not a party to this suit) received a notice from Defendant Dygert ("Dygert"), DVCA's attorney, alleging that Miller had an outstanding assessment and notifying Miller that DVCA would impose a lien on Miller's property. Miller's brother mailed a payment equivalent to the outstanding assessment to the DVCA. The DVCA later refused to allow Miller to vote because he had not paid the assessment.

Lowe allegedly told Miller's brother that DVCA would not accept the second payment and then returned the check. Miller's brother resent the check to DVCA, which placed the money in an "anonymous account" and then stated that Miller was still in arrears and could not vote. DVCA later sued in general district court and filed a lien against Miller's Dogwood Valley property. The general district court ruled in Miller's favor and, again, declared the assessment illegal; in the meantime, however, Miller incurred substantial legal expenses, the publicity surrounding the activity adversely affected his reputation, and the unreleased liens created a cloud on his title.

Defendants allegedly imposed a lien on property owned by Plaintiff Dye ("Dye") because Dye had failed to pay an assessment; Defendants later ordered Dye's lots be sold at public auction. After Dye's attorney notified him of the pending sale, Dye paid the assessment.

3

Defendants, however, allegedly refused to release the liens, a violation of Virginia law. Dye has incurred legal expenses in attempting to have the liens released and to clear the cloud on the title to his Dogwood Valley property and has paid a higher interest rate on a refinanced loan due to this clouded title.

Defendants sued Plaintiff Colby ("Colby"), seeking assessments and attorneys' fees after the Virginia Supreme Court held that the DVCA was not a property association under Virginia law and that Defendants' assessments were illegal. Colby had already paid the assessments, but Defendants imposed a lien on his property and published notice of a public sale of his property. Colby incurred legal expenses in stopping the sale of his property.

### *B. Procedural Background*

Plaintiffs filed suit in this Court on April 7, 2006, pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), which allows civil remedies for violations of § 1962. Defendants moved to dismiss on June 6, 2006, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The Court heard arguments from both parties on August 4, 2006, and subsequently ordered Plaintiffs to amend their complaint to properly state a RICO claim.

Plaintiffs' amended complaint was timely filed on August 17, 2006, and Defendants again moved to dismiss pursuant to Rule 12(b)(6). Plaintiffs filed a timely brief in opposition.[1]

---

[1] The pretrial order in the case gives parties wanting to oppose a motion fourteen days from the date of service of the movant's brief to file a brief in opposition. Defendants served their motion to dismiss the amended complaint on August 31, 2006 and Plaintiffs filed a brief in opposition on September 18, 2006, eighteen days later. Plaintiffs correctly point out that because Defendants served their motion to dismiss using the court's CM/ECF system, Rule 6(e) gives them an additional three days on top of the fourteen in which to file their brief in opposition. *See* Fed. R. Civ. P. 6(e) ("Whenever a party must or may act within a prescribed period after service and service is made under Rule 5(b)(2)(B), (C), or (D), 3 days are added after the prescribed period would otherwise expire under subdivision (a).").

Here, then, the prescribed period "would otherwise expire" under Rule 6(a) on Thursday, September 14. Giving Plaintiffs an additional three days from that time means that Plaintiffs' brief would not be due until either Monday, September 18 (adding three days to the original fourteen days means the due date would fall on Sunday, September

4

This matter is therefore ripe for decision.

## II. STANDARDS OF REVIEW AND DISCUSSION

### *A. Rule 12(b)(6)*

Defendant argues that Plaintiffs' complaint fails to state a claim upon which relief can be granted and therefore moves to dismiss Plaintiffs' claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999).

In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true, must draw all reasonable inferences in favor of the plaintiff, and should not dismiss for failure to state a claim unless the defendant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim" that would allow the plaintiff relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001). Stated differently, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v.*

---

17 and Rule 6(a) would push that to Monday, September 18) or Tuesday, September 19 (subjecting the additional three-day period to the requirement in Rule 6(a) that periods of fewer than eleven days do not include intermediate Saturdays and Sundays, meaning Friday, September 15 is additional day one, Monday, September 18 is additional day two, and Tuesday, September 19 is additional day three). The precise question of whether this additional three-day period is itself subject to the provision of Rule 6(a) requiring that intermediate Saturdays, Sundays, and legal holidays be excluded is not before the Court. Because Plaintiffs here filed their brief in opposition on September 18, the brief is timely under either scenario.

Additionally, the Court declines to adopt Plaintiffs' interpretation of these rules, which would require the Court to *first* add the three-day extension (subject to the fewer-than-eleven-days portion of Rule 6(a)), *then* add the original fourteen-day period (subject to Rule 6(a)). Rule 6(e) explicitly states that the three-day extension is "added after the prescribed period would otherwise expire under subdivision (a)." Fed. R. Civ. P. 6(e). The Court reads this to mean that it must first determine when the prescribed period would expire, *then* add three days.

*Sorema N. A.*, 534 U.S. 506, 514 (2002). These tests are "prospective, not retrospective" and look "to what a plaintiff *can* show, not what she *has* shown." *Jordon v. Bowman Apple Prods. Co.*, 728 F. Supp. 409, 411 (W.D. Va. 1990) (emphasis added).

Additionally, the court is not required to accept legal conclusions without a basis in fact. *See, e.g., Edwards*, 178 F.3d at 244 ("[F]or purposes of Rule 12(b)(6), we are not required to accept as true the legal conclusions set forth in a Plaintiff's complaint."); *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979) (holding that a mere allegation in the complaint that the defendants acted under color of state law was insufficient to withstand scrutiny under Rule 12(b)(6) because, "[w]ere it otherwise, Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint").

## *B. RICO*

To properly state a RICO claim, Plaintiffs must allege first that Defendants violated 18 U.S.C. § 1962 and second that Plaintiffs were injured as a result of Defendants' violation. To properly state a claim that Defendants violated § 1962, Plaintiffs must allege each element of the provision of § 1962 allegedly violated. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (requiring that a Plaintiff suing for a violation of § 1962(c) to "allege each ... element[] to state a claim"). Because here Plaintiffs allege that Defendants violated all four provisions of § 1962, Plaintiff must allege elements of each of those provisions. *See id.* Elements common to § 1962(a), (b), and (c) are: a pattern, of racketeering activity, by an enterprise, engaged in interstate or foreign commerce. Additionally, Section 1962(d) makes it unlawful to conspire to violate § 1962(a), (b), or (c).

6

## 1. "Racketeering activity"

"Racketeering activity" is defined in § 1961 to mean either any act or threat (so-called "predicate acts") involving, among other things, state-law extortion punishable by more than one year imprisonment, *see* 18 U.S.C. § 1961(1)(A) (2000), or any act indictable under, among other things, 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1951 (criminal extortion), *see* 18 U.S.C. § 1961(1)(B) (2000). Here, Plaintiffs allege in their amended complaint that the predicate acts are criminal extortion under Virginia law,[2] mail fraud in violation of 18 U.S.C. § 1341, and criminal extortion in violation of 18 U.S.C. § 1951.[3]

Defendants claim, however, that a plaintiff alleging a violation of § 1951 as the predicate act must "allege and prove" that the extortion obstructs, delays, or affects interstate or foreign commerce and that Plaintiffs here failed to "plead and prove" this element. Defendants cite no law or authority that would allow the Court to agree with such a proposition at this stage of the proceedings. For purposes of pleading a RICO racketeering activity, the Court is not persuaded that Plaintiff must prove the elements of the alleged predicate act, that is, that Defendants actually engaged in extortion in violation of 18 U.S.C. § 1951 (which would require, of course, that Defendants obstructed, delayed, or affected interstate or foreign commerce). It is sufficient at this stage that Plaintiffs allege that the predicate acts occurred. Here, Plaintiffs have done so.

---

[2] Although Plaintiffs alleged in their original complaint that extortion under Virginia law was a predicate act, (*see* Compl. ¶ 7), they only state in their amended complaint that Defendants' actions "constitute extortion under ... the state ... statute[] cited above" without actually citing the state statute (*see* Am. Compl. ¶ 26). The Court can reasonably infer that Plaintiffs are referring to Virginia Code § 18.2-59, "Extorting money, etc., by threats."

[3] Defendants' original motion to dismiss argued that Plaintiffs failed to allege racketeering activity. Plaintiffs' amended complaint explicitly alleges federal mail fraud and federal extortion as the predicate acts.

7

## 2. "Interstate commerce"

Defendants claim, too, that Plaintiffs failed to properly allege the interstate commerce element common to all violations of § 1962.

The Court notes that the Plaintiffs have not failed to at least allege the interstate commerce element. Plaintiffs state in their amended complaint that "by using the U.S. Postal Service and the U.S. mail systems, the Defendants' actions affected interstate commerce." (Am. Compl. ¶ 28). But the question remains whether, even assuming Plaintiffs could show facts to support this allegation, the enterprise is engaged in interstate commerce by sending interstate mail that demands the receiver pay assessments. (*See* Am. Compl. ¶ 7k (stating that Defendants sent notices by certified mail to out-of-state homeowners))

And it is the activities of the enterprise that matter, not the effects of the racketeering activity. It is not enough for Plaintiffs to allege that the *predicate acts* affect interstate commerce. *See United States v. Rone*, 598 F.2d 564, 573 (1979) (stating that RICO requires that "the activity of the Enterprise, not each predicate act of racketeering, have an effect on interstate commerce" and that there must be "a nexus of the enterprise to interstate or foreign commerce"). In other words, to properly state a RICO claim, Plaintiffs must allege that the *enterprise* is engaged in interstate commerce or that the *enterprise's* activities affect interstate commerce. *See* 18 U.S.C. § 1962(a) (2000) (requiring an "enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."); *id.* § 1962(b) (requiring an "enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce"); *id.* § 1962(c) (requiring an "enterprise engaged in, or the activities of which affect, interstate or foreign commerce").

The nexus between the enterprise and interstate commerce need only be minimal. *United*

*States v. Robertson*, 514 U.S. 669, 672 (1995); *United States v. Farmer*, 924 F.2d 647, 651 (7th Cir. 1991) ("[T]he required nexus between the activities of the enterprise and interstate commerce need not be great."). An incidental effect on interstate commerce or the mere fact that an enterprise's equipment or supplies originate in interstate commerce can be sufficient. *See United States v. Allen*, 656 F.2d 964, 964 (4th Cir. 1981) (per curiam) (holding that the supplies used in the defendant's bookmaking operations satisfied the interstate commerce requirement); *United States v. Altomare*, 625 F.2d 5, 7-8 n.8 (4th Cir. 1980) (holding that defendant county prosecutor had a sufficient nexus with interstate commerce because interstate telephone calls were made from the county prosecutor's office and because supplies and materials purchased and used by the defendant traveled interstate); *Meineke Disc. Muffler Shops, Inc. v. Noto*, 548 F. Supp. 352, 354 (E.D.N.Y. 1982) (stating that a plaintiff who alleges that defendants received or utilized supplies shipped into the forum state sufficiently pleads an interstate commerce nexus). *But see Musick v. Burke*, 913 F.2d 1390, 1392-93, 1398-99 (9th Cir. 1990) (holding that the fact that the enterprise's equipment or supplies originated in interstate commerce was insufficient).

Indeed, several courts have held that using the United States mail system affects interstate commerce. *See, e.g., United States v. Kunzman*, 54 F.3d 1522, 1526 (10th Cir. 1995) (finding that an allegation that a defendant affected interstate commerce "through the use of interstate highways [and] the use of telephone and mails" was "sufficient to allege an effect on interstate commerce"); *United States v. Martino*, 648 F.2d 367, 381 (5th Cir. June 1981) (stating that an indictment alleging that defendants "did knowingly and willfully place and cause to be placed in authorized depositories for mail matter to be sent and delivered according to the directions thereon by the Postal Service of the United States" "sufficiently alleged" an effect on interstate commerce), *aff'd sub nom., Russello v. United States*, 464 U.S. 16 (1983); *City of N.Y.*

9

*v. Cyco.net, Inc.*, 383 F. Supp. 2d 526, 554 (S.D.N.Y. 2005) (stating that "[t]he standard in the Second Circuit regarding whether the use of mails and wires affects interstate or foreign commerce is generally low" and that only "a minimal effect" is required); *cf. Morrow v. Blessing*, No. 04-1161, 2004 WL 2223311, at *6 (E.D. Pa. 2004) (unpublished) (differentiating between mailing workers' compensation payments (does affect interstate commerce) and mailing defamatory letters (does not affect interstate commerce) in that the latter "had no commercial content" and to hold otherwise would mean that "every letter sent through the U.S. mail, including personal correspondence, could have an impact on interstate commerce," a proposition the court declined to support).

There is only one case from the Fourth Circuit on point, *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138 (E.D.N.C. 1986) ("*Weft I*"), *aff'd sub nom.*, *Weft, Inc. v. Georgaide*, 822 F.2d 56 (4th Cir. 1987) ("*Weft II*") (unpublished). In *Weft I*, the plaintiffs' complaint alleged in their federal securities claims that the defendants used the mail system, which had an effect on interstate commerce, but failed to make such an allegation for their RICO claim. The court said that even if the plaintiffs had included such allegations to support their RICO claim, "it is doubtful that they would constitute a sufficient effect on interstate commerce under RICO." *Weft I*, 630 F. Supp. at 1142.

To support this proposition, the court cited *Gitterman v. Vitoulis*, 579 F. Supp. 423 (S.D.N.Y. 1983). In *Gitterman*, the court declined to hold that the "*intra*state use of the telephone is equivalent to an effect on interstate commerce by the enterprise." *Id.* at 425 (emphasis added). The *Weft I* court also cited to *Fields v. National Republic Bank of Chicago*, 546 F. Supp. 123 (N.D. Ill. 1982). In *Fields*, the court found that the plaintiff failed to even allege a nexus between the enterprise and interstate commerce and that because the enterprise's

10

real estate activities where "wholly intrastate," such an allegation would likely be futile even if made. *Id.* at 125 n.6.

The holding of *Weft I* and the reasoning on which it is based, however, are readily distinguishable from the facts here. In *Weft I*, the court's holding was explicitly based on the fact that those plaintiffs failed to even allege an effect on interstate commerce; here, Plaintiffs have made such an allegation. Although the court stated that it was "doubtful" whether an allegation that the defendants used the mail system, if made, would prove a sufficient nexus between the enterprise and interstate commerce, that issue was not before the *Weft I* court. Additionally, the issue in *Gitterman* was whether *intra*state communications (there, by telephone) affected interstate commerce, not whether *inter*state communications (here, by mail) affected interstate commerce; likewise, in *Fields*, the plaintiffs failed to allege whether the enterprise's activities affected interstate commerce, notwithstanding the fact that those activities were *intra*state.

Because Plaintiffs here have alleged the enterprise had an effect on interstate commerce, because the effect on interstate commerce need only be minimal, and given the standard of review this Court must employ for motions to dismiss under Rule 12(b)(6), the Court does not believe that "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002); *see also Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick*, 726 F. Supp. 1083, 1091-92 (E.D. Mich. 1989) (citing *Weft I* and *Fields*, but holding "with some skepticism" that "the plaintiffs' allegation of the interstate use of the mails and wires as having an effect on interstate commerce suffices to meet the pleading requirement"). As such, Defendants' motion will be denied with respect to this claim.

11

## C. Rule 9(b)

Defendants also move to dismiss based on Plaintiffs' alleged failure to conform its amended complaint to Rule 9(b) of the Federal Rules of Civil Procedure. If the alleged predicate acts underlying a RICO claim are based on mail fraud, as they are here, allegations in the complaint must meet the requirements of Rule 9(b), which requires that fraud be stated with particularity. *See, e.g.*, *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2nd Cir. 1992); *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 799 (D. Md. 1998) ("RICO claims predicated on mail fraud must comply with Rule 9(b)"). The particularity requirement is satisfied if plaintiffs plead the "circumstances" of the fraud, which "refer[] to such matters as the time, place, and contents of the false representations." *Kerby*, 992 F. Supp. at 799.

Here, Plaintiffs have attached as exhibits to their amended complaint copies of letters they say help form their claim of mail fraud. Because exhibits to a pleading are considered part of the pleading, *see* Fed. R. Civ. P. 10(c), and because these letters sufficiently plead the "circumstances" required by Rule 9(b), Defendant's motion to dismiss Plaintiffs' claims based on insufficiency of pleading under Rule 9(b) will be denied.

## D. Damages

Finally, the Court will defer a decision on possible remedies available to Plaintiffs — including the possibility of an injunction — until later in these proceedings. Such a decision would be premature at this stage.

## III. CONCLUSION

For the foregoing reasons, Defendants' motions will be DENIED in an order to follow. It is so ORDERED.

12

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: *[signature]*
United States District Judge

Date: November 13, 2006